UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

**Charles Bozzo**
           *Plaintiff,*                            Case No
                                                Hon.

v.


**Jennifer Nanasy**, Discipline Coordinator
Michigan Department of Corrections
**Heidi Washington**, Director Michigan
Department of Corrections
                *Defendants*.
_____/
Frank G. Becker (P25502)
Gregory D. Bill (P34096)
Law Office of Frank G. Becker
Attorney for Plaintiff
18501 W. 10 Mile Road
Southfield, MI  48075
(248) 789-2437
frankgbecker@yahoo.com
_____/

## COMPLAINT AND JURY DEMAND

    NOW COMES Plaintiff, **Charles L. Bozzo**, by and through his attorney,

Frank G. Becker and complains against Defendants, as follows:


## A.
## PARTIES JURISDICTION AND VENUE


    1.     Plaintiff, Charles L. Bozzo, is a citizen of the United States and a

1

resident of the City of Lansing, County of Ingham, State of Michigan, and is entitled to the protections provided by the United States Constitution. The amount in controversy exceeds Seventy-five thousand ($75,000) dollars and Plaintiff is seeking injunctive reliew.

2. (A) Jennifer Nanasy, at all relevant times, was employed as the Discipline Coordinator for the Michigan Department of Corrections at the headquarters of the Michigan Department of Corrections located at 206 E. Michigan Ave., Grandview Plaza Lansing, Ingham County, Michigan 48909

   B.)  Defendant, Heidi E. Washington, at all relevant times, was employed as the Director of the Michigan Department of Corrections whose office is within the headquarters of the Michigan Department of Corrections (hereinafter "MDOC") at 206 E. Michigan Ave., Grandview Plaza, Lansing, Ingham County, Michigan 48909

3.     This action arises under the United States Constitution, in particular under the provisions of the *1st, 4th, 5th 8th, 9th and 14th* Amendments of the Constitution of the United States as made actionable by Federal law pursuant to *42 USC § 1983*.

4.      At all times relevant hereto, the Defendants were acting under color of law and pursuant to their badge of governmental, executive authority granted to them by the MDOC and State of Michigan.

5.      Jurisdiction is conferred upon this Court pursuant to *28 U.S.C. § 1331* and

*28 U.S.C. § 1343* because the matters in controversy arise under the Constitution

and laws of the United States. Plaintiff, Charles L. Bozzo, a former corrections

officer, for the MDOC has presented these complaints to the Defendants through

grievance procedures and has exhausted all his administrative remedies.

6.      Venue is proper in this Court under *28 U.S.C. § 1391(b)* because the events

that give rise to Plaintiff, Bozzo's claims took place within the Judicial District of

this Court.  as the involved MDOC facilities are located within this district.

7.      This Court has authority pursuant to *42 U.S.C. § 1983* to award appropriate

actual, consequential, compensatory, and punitive damages, and has authority

under *42 U.S.C. § 1988* to award attorney fees and costs to Plaintiff and Counsel.

 8.      Defendants, Nanasy and Washington, as the Discipline Coordinator and the

Director of the MDOC were active participants in the decision to impose discipline

and to terminate the Plaintiff and had executive policy making authority and direct

supervisory control regarding the commencement, continuation, maintenance and

prosecution of disciplinary and termination proceedings against the Plaintiff,

Charles Bozzo.  Moreover, Defendants Nanasy and Washington ratified and

condoned the termination of Plaintiff following a blatantly unfair and

unconstitutional arbitration process. The Complaint allegations are brought against

3

Defendant, Nanasy and Washington, in their individual capacities based on their direct involvement and control as to the discipline and termination of the Plaintiff. As to Defendant Washington, the prayer for injunctive relief, in the form of reinstatement of the Plaintiff to his position, is also brought given this Defendant's official capacity and authority to order this relies as the highest policy making executive with the MDOC.

9.      The Defendants had the duty to act consistent with the laws and Constitution of the United States as to the public employment of the Plaintiff and Defendants had the direct responsibility to provide and enforce constitutional policies at the MDOC as to their conduct toward Plaintiff.

10.      This action arises under the United States Constitution, particularly under the right to free speech as contained in the 1st Amendment, the right to privacy as to personal conversations and personal relationships without unreasonable governmental intrusion, the right to due process of law as protected by the 5th and made actionable to the states based on the 14th Amendment and the right to a personal integrity and a zone of privacy as provided by the 9th Amendment to the Constitution of the United States,  and to rights protected by the 14th Amendment which provides that no person shall be "deprived of life, liberty, or property without due process of law" and also arises under the 14th Amendment's  equal protection clause that

provides that "no state shall deny any person the equal protection of the law."

11.     The Plaintiff's, as a correctional employee employed by the State of Michigan is constitutionally protected and is well established prior to the Plaintiff's employment termination including by the case of **John Meyers v. City of Cincinnati**, 14 F.3d 1115 (6th Cir. 1994).  The Defendants knew or should have known that their actions against Plaintiff and basis of their method of termination of Plaintiff violated Plaintiff's constitutional rights.

12.     Plaintiff, a male, began his employment as a Correctional Officer with Defendant in 2013 for approximately one year. Thereafter, Plaintiff applied and was rehired on March 29, 2015.  The plaintiff remained a correctional officer, in good standing until he was terminated from his employment in procedures that were commenced on July 31, 2019. and concluded in March of 2021.

13.     During his employment with MDOC, Plaintiff was assigned to work at the Bellamy Creek Correctional Facility, which is under the MDOC's authority and located in Ionia, Michigan.

14.     During the period of Plaintiff's employment with the MDOC, a fellow female correctional officer, who shall hereinafter be referred to as Jane Doe, developed hostile feelings toward Plaintiff and reported two alleged incidents to her Employer and to fellow employees at Bellamy Creek Correctional Facility.

5

Neither incident occurred  within work hours or at the place of their employment,

Bellamy Creek Correctional Facility. Jane Doe was the only person to file a

misconduct report against the Plaintiff, during his entire period of employment as a

correctional officer at MDOC.

15.     Jane Doe initially reported a complaint as to comments made by Plaintiff

while carpooling (traveling to and from work with another passenger) in June of

2017. After Jane Doe made her complaint and reported the alleged comments of

Plaintiff that were not hostile nor directed toward Jane Doe, MDOC's supervisory

personnel advised Jane Doe  that no Department of Correction rule violation

occurred regarding any comments made by Plaintiff during their car pool travel.

Plaintiff stopped carpooling with Jane Doe after this incident. Plaintiff had no

conversations with her after this time.

16.     Approximately, four (4) months later, in October of 2017, Jane Doe accused

the Plaintiff of following her home in his car. Plaintiff, who took the same general

route home and had family members living in the same area where Plaintiff lived

did not follow Jane Doe home and the charge was baseless. On this occasion, Jane

Doe did not report any traffic offense or dangerous driving committed by Plaintiff

and Jane Doe displayed her extreme hostility to Plaintiff and overreaction by

reporting that she was prepared to shoot the Plaintiff with a gun if he approached

her house, which of course, did not happen. No job action was instituted against the Plaintiff by his employer, at the time. As a result, Plaintiff provided at the request of the MDOC the truthful explanatory information as to his reason and purpose of visiting family members, who lived in the area that Plaintiff travelled.

17.    Jane Doe, not only reported her version of these June and October of 2017 incidents and her derogatory opinion of the Plaintiff to the Department of Corrections, but generally discussed these incidents and her derogatory opinion of the Plaintiff to fellow employees that resulted in Plaintiff being confronted with questions and comments from fellow employees as to the Jane Doe created controversy involving Plaintiff.  Generally, Plaintiff's reputation was harmed by those hearing and accepting Jane Doe's version of the relevant events.

18.    Naturally, to defend his reputation, when Jane Doe's allegations were discussed, Plaintiff explained the petty, non-job-related allegations and to defend his reputation referred to Jane Doe to other correctional officers in a derogatory manner as Jane Doe had done to Plaintiff to MDOC Supervisory Personal for purposes to affect Plaintiff's employment and to fellow co-workers. On occasion, Plaintiff may have engaged in the casual use of obscenities.  The use of profanities in a non-confrontational situation, as Plaintiff used profanities, was generally accepted and a common practice by employees and supervisors at Bellamy Creek

7

Correctional Facility. None of the profanities used were spoken to Jane Doe, directly or indirectly, although Jane Doe directed profanities to Plaintiff while Plaintiff was physically present and able to hear the profanities, and none of the profanities, used by Plaintiff, were used in a hostile or sexually suggestive manner, nor could be reasonably construed as being hostile or sexually suggestive. Plaintiff never physically or verbally confronted Jane Doe inside or outside of their common workplace at any time. Plaintiff used profanities in a colloquial manner of expressing his disdain for the petty and unfounded allegations made by Jane Doe against Plaintiff. Plaintiff never made any reports of complaints against Jane Doe with the MDOC.

19.   These comments made by Plaintiff in conversation with fellow correctional officers were never said by Plaintiff, in the presence of inmates and were only a natural human coping reaction to the groundless allegations made by Jane Doe and in defense of Plaintiff's loss of reputation, self-esteem and emotional distress arising from Jane Doe's statements. Plaintiff's words were not in violation of any statute, ordinance, MDOC rule, regulation and were consistent with general conversation.  Plaintiff never spoke of Jane Doe in a hostile, vindictive or sexually suggestive, or threatening manner, and never spoke of her in the presence of prisoners and never said any words to create a hostile work environment and his

8

words and actions never created a hostile work environment for Jane Doe, who

Plaintiff avoided to the best of his ability so as to circumvent potential claims made

by Jane Doe. Plaintiff was aware of Jane Doe's deep unreasonable hostility toward

him and initiation of unfounded and rejected reports that were apparently attempts

to have Plaintiff fired from the MDOC.

20.      Thereafter, **approximately Sixteen (16) months later** in February of 2019,

Jane Doe erroneously and unreasonably came to the opinion that the Plaintiff

would be purchasing a home in her neighborhood for the purpose to harass her,

although there was no interaction between the two of them other than what has

been stated herein.

21.      Although no such home purchase was made by Plaintiff, in apparent

retaliation in February of 2019, Jane Doe bizarrely reported, based on fabricated

reports to induce a job action and/o anonymous unverified hearsay, that Plaintiff

was providing Jane Doe's residential address and vehicle plate  information to

prisoners and that Plaintiff then, following objections by these prisoners to

receiving this information, Plaintiff made baseless misconduct reports against these

prisoners because of their objections. These reports were never substantiated by

any evidence or corroborated by surveillance or investigation. Jane Doe also

reported that Plaintiff referred to Jane Doe with profane epithets in conversations

with these same prisoners.  These allegations were totally nonsensical, false, and

unsupported by any evidence. Indeed, Plaintiff was cleared of any wrongdoing.

22.    To enhance this new February of 2019 Complaint, Jane Doe resurrected her

previously rejected 2017 Complaints **that were specifically time barred based on**

**collective bargaining contractual provisions and rules governing Plaintiff's**

**employment with the Defendant**.

23.    On June 19, 2019, Defendant served the Plaintiff with a misconduct charge.

The Defendant's complete stated written "Description of the Violation" was:

On 10/1/17, C/O Charles Bozzo made inappropriate comments and told sexual
stories to C/O Jane Doe during their carpool. The inappropriate behavior by C/O
Bozzo forced C/O Smith to discontinue utilizing the carpool. There is also
evidence and witnesses to support the allegations that C/O Bozzo referred to C/O
Smith as "that fucking 'bitch/cunt'.

There was no discipline recommended for this violation.


24.    To support this violation, Defendant relied on the following "Employment

Work Rules" that were promulgated by Defendant in the "Employee Handbook"

Plaintiff was charged with violation of **MDOC Work Rule #1**, entitled "**Humane**

**Treatment of Individuals**," which provided:

        Employees are prohibited from treating other employees, offenders, visitors,
and volunteers in an inhumane manner. Employee actions must be taken on a
rational, objective, and non-arbitrary basis."

**MDOC Work Rule #3**, entitled "**Discriminatory Harassment**" that

provided:

An employee shall not discriminate or engage in discriminatory harassment on the basis of race, religion, color, national origin, age, sex, sexual orientation, height, weight, marital status, disability, genetic information, or partisan considerations. Such conduct will not be tolerated in the Department."

"An employee must report any incidents of such conduct to the designated discriminatory harassment counselor or to the appropriate supervisor. For specific information pertaining to confidentiality and reporting requirements refer to PD 02.03.109 "Discriminatory Harassment

Employees are prohibited from retaliating against a person because the person has made a complaint, either orally or in writing, of discrimination or discriminatory harassment based on race, color, national origin, disability, sex, sexual orientation, age, height, weight, marital status, religion, genetic information, or partisan considerations.

And **MDOC Work Rule #5**, entitled "**Conduct Unbecoming A Department**

**Employee**" that provided:

An employee shall not behave in an inappropriate manner or a manner which may harm or adversely affect the reputation or mission of the Department. Employees have a special responsibility to serve as role models. Employees must also support and uphold the law through their own actions and personal conduct.

If an employee is arrested for or charged with a criminal offense the behavior shall be investigated to determine whether such activity violates this rule. If the investigation concludes the behavior violates this rule, whether it occurred on or off duty, disciplinary action up to and including dismissal may result regardless of the prosecutorial action or court disposition of the arrest or charge.

Employees who are found in violation of Department rules or Department policy may also be found in violation of this rule, along with Civil Service Commission Rule 2-10.3(b).

25.    The above alleged rule violations are vague and conclusionary and do

not pertain to any conduct by the Plaintiff. The rule violations are so vague and general that the recitation of the rules did not provide fair notice to the Plaintiff of what the specific factual basis for the violation he was charged. There was no recitation of how Plaintiff allegedly violated the above rules provided by Defendants.

26.    The failure to state a recommended discipline and the fact that the Plaintiff was allowed to work at the same facility without restrictions (where Jane Doe continued working) caused the Plaintiff and his union representatives to believe that little or no discipline would be rendered to him which caused little preparation of his case by Plaintiff or his representatives. Moreover, the complaints were specifically time-bared and Plaintiff was assured by his representative and supervisors that little would come of these obviously tenuous allegations.

27.    On June 24, 2019, a brief (20 minute) "Disciplinary Conference" was convened in the Warden's Office at which time no questioning or testimony took place and Plaintiff and his designated union representative only made short general statements contemplating Plaintiff's future employment and the dismissal of the charges.

28.    On June 28, 2019, Defendant, Michigan Department of Correction's Discipline Coordinator, Jennifer Nanasy, received the Disciplinary Conference

Report. Nanasy had the apparent and actual authority, based on MDOC policy  and the chain of command  to administer discipline from the range of a written reprimand to permanent discharge. On July 31, 2019, in a short correspondence, Nanasy, advised Plaintiff, despite the vague, staleness, irrelevancy and paucity of evidence in support  of the allegations that he would be terminated for this unverified and specifically time bared unsupported allegations that were not addressed in any work rules and despite profanity had been directly stated to and about Plaintiff by Jane Doe..

29.    The Plaintiff timely initiated his collective bargained right to an Arbitration Hearing that was held via Zoom over a three (3) day period ending on December 17, 2020. During the hearing, Defendant Discipline Coordinator, Jennifer Nanasy, with the knowledge and approval of Heidi Washington testified as to that "things were different now" and a new harsher policy was being implemented in Plaintiff's case, as opposed to prior precedential cases (specifically pointed out to Defendants by Plaintiff's representative) where no discipline or lesser or progressive discipline had been applied.

30.  Essentially, Plaintiff was being falsely depicted and set up as a readymade, convenient male chauvinistic pig so that Defendants could have Plaintiff's termination serve as a trophy to display Defendants' participation and willingness

13

to take strong action against Plaintiff, who was incorrectly perceived and or mischaracterized as being a male employee who did not accept the modern female basically because he was an older white male, wherein Plaintiff was actually fully supportive of equal rights for women, especially in the workplace and did not have a hostile reaction from any other female in the facility except Jane Doe's mother, who was a long term employee, who confronted Plaintiff when the charges were brought against the Plaintiff.

31.    Because of the absence of proof, at the arbitration hearing, the Defendants brought a surprise female correctional employee witness, who had a former romantic relationship with the Plaintiff, and was not involved in the investigation to testify, of alleged private conversations in the home between the two of them in an attempt to characterize Plaintiff as having hostility toward Jane Doe and cast Plaintiff  in a negative light based on this gross invasion of Plaintiff's personal privacy and impermissible character evidence of out of all relevance in an action involving an employment termination arbitration proceeding.

 32.   Despite her misperceptions, inaccuracies, falsehoods and the sparsity of contact with the Plaintiff and lack of direct communications, Jane Doe testified that she was afraid of the Plaintiff and her stated subjective fear statement, even although not rational, was relied on as a significant factor by the Defendants; as

though, subjective fear of a group of people would justify discrimination and termination from employment when Jane Doe had engaged in similar behavior toward Plaintiff. Subjective feelings of dislike are irrelevant as to ANY MDOC rule violation and do not justify termination from governmental employment.

33.    On March 1, 2021, the Arbitrator issued his ruling and without evidentiary support made the following conclusionary statement reliant on a new policy and applying *ex post facto* contemporary subjective standards so as to punish Plaintiff for past wrongs toward women and engaged in disparate unequal treatment of males and females to rationalize the Plaintiff's termination: "In America in 2021, a male employee may not repeatedly and habitually refer to a female employee as a fucking bitch or a cunt and expect to keep his job. When the employee in question is a corrections officer and the person, he is insulting is a female corrections officer in a male institution, and the audience for the abusive language includes prisoners, there is no need for further discussion."

34.   There was no evidence of Plaintiff making any statement referring to Jane Doe, her vehicle or personal information or statement referring to her in a profane manner in front of prisoners and the only prisoner to testify specifically denied that any statement was made regarding Jane Doe in front of prisoners. The arbitration decision was directly caused by the direct and active intervention into the

proceedings by the Defendants who demonstrated by the manner of preparation of the case, the form of discipline as termination of employment  that Defendants were strongly determined to terminate the Plaintiff to demonstrate their adherence to the Defendants' perception of current societal norms through the molding the Plaintiff into a false caricature of a male chauvinistic pig and to rely on subjective perceptions of character traits as opposed to actual evidence of any rule violations.

### CAUSE OF ACTION PURSUANT TO 42 USC § 1983

**VIOLATIONS BY DEFENDANTS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS PROTECTED BY THE FIRST, FOURTH, FIFTH, NINTH AND FOURTEENTH AMENDMENTS TO THE US CONSTITUION OF RIGHTS OF FREEDON OF SPEECH AND ASSOCIATION, RIGHT TO BE FREE OF GOVERNMENTAL INTRUSION INTO HIS PERSONAL LIFE, RIGHT TO HIS PRIVACY, AND RIGHTS TO DUE PROCESS OF LAW AND EQUAL PROTECTION UNDER THE LAW PRIOR TO DEPRIVATION OF PROPERTY, INCLUDING THE LOSS OF HIS EMPLOYMENT.**

35.      Plaintiff repeats and realleges the previous paragraphs of this Complaint as though the previous paragraphs were fully set forth herein

36.       At all relevant times herein, the Plaintiff, Charles Bozzo, had the well-established due process right of freedom of speech and to associate with others and to freely speak words there were not "fighting words' or  words designed to cause harm to others, Plaintiff has the right to believe that a fellow employee would not be intimidated to speak of an alleged private conversation and have these words used

to demonstrated supposed bad character, Plaintiff had the right not to be punished for his perceived character flaws, and  to be advised of the charges, to have specific and clear charges, to not be punished for private conversations and private use of profanities that were not the subject of a discipline rule, to not be punished in the absence of proof, to not lose his employment because of perceived current contemporary notions of behavior, to not suffer a loss of employment because of subjective notions of a person's character, to not be made a scapegoat and an example to remedy past wrongs, to not be punished because of subjective appraisals and baseless trepidation, to not be punished for perceived thoughts that were not followed by any action. To have a fair hearing not infected by clear indication that the Defendants demanded a certain result to achieve other purposes than applying the Department rules that governed the employment, to have a fair hearing consistent with precedential prior decisions, not to have a new rule applied without notice, to be treated the same as younger men and women and not to be treated differently because he was a male who was over the age of 45 years.

37.    Defendants, Nanasy and Washington, at all relevant times, knew, or should have known, of the Plaintiff's well established due process rights. However, Defendants created a new policy, acted upon a new policy, and enforced that new policy in this case that denied due process of law to the Plaintiff:

17

38.    The Plaintiff's termination was for using profane language in private conversations with fellow employees in reference to a female correctional officer, who had targeted the Plaintiff for petty matters that had been rejected by the MDOC, previously.  Jane Doe, instead of being discredited by these previous allegations, was embraced by the Defendants who reversed past practice and fully accepted, based on uncorroborated hearsayallegations that were not substantiated at the arbitration hearing.

39.    It was not consistent with due process to punish the Plaintiff , when there is no Department of Corrections rule policy or custom making the use of profane words, used for emphasis, not directed at anyone but in self-defense and not to harass and/or intimidate and referable to rejected employment complaints punishable by termination, not progressive discipline, without a warning.

 40.    MDOC never established any rules forbidding the use of profanities in private conversations with fellow employees. Moreover, nonviolent disputes and personality clashes were common between employees at MDOC's facilities, including at Bellamy Creek Correctional Facility.

41.     Plaintiff was specifically targeted since he was  an older male employee to create a new policy and set an example in reference to the discussion of female employees where there is no such corresponding policy in reference to the

18

discussion of male employees.  Plaintiff never directed any sexual comments to Jane Doe and, simply because the Plaintiff was and older male, Defendants transformed the employee dispute between Plaintiff and Jane Doe into sexual harassment although no evidence of such was ever put forward and Plaintiff had no opportunity to provide a full explanation. Defendants engaged in stereotypical classification instead of fairly evaluating the evidence. Defendants demonstrated a predilection to consider Jane Doe a victim and Plaintiff as a tormentor simply because she was a female, and he was a male.

42.    The following additional facts support the Plaintiff's claim of denial of due process and of equal protection of the law as being violated as to Plaintiff  in this case:

a)  The testimony and statements of Jane Doe, including her unreasonable subjective "fear" of the Plaintiff was given more weight than the testimony and statements of the Plaintiff.

b)   The Plaintiff was charged and terminated based on alleged events that were contractually time bared (Article 10 § A); and regarding the claim of Discriminatory Harassment bared by a specific statute of limitations contained in the contractual agreement. The entire factual basis of the allegations was grounded in inadmissible hearsay and not supported by any evidence.

c)   Previous cases within the MDOC of a similar nature where arguments or disagreements between employees resulted in the use of profanities and even violent behaviors did not result in the dismissal of the involved employees, especially when female employees undertook this type of behavior.

d)   Defendants disregarded basic rules of investigation, evidence, due process and an established policy favoring progressive discipline.  The termination was also impacted by the fact that Jane Doe had influential colleagues within the Department's workplace causing Jane Doe's claims to be given enhanced credibility. At no time did the Plaintiff harass or even contact Jane Doe by calling, text messages emailing or other form of communication.

e).  The Defendants also had been successfully sued by the United States Department of Justice for sex discrimination as to female correctional officers and desired an example of being supportive of female employees   so invented an image of Plaintiff as a misogynistic male so as to appear through his unsubstantiated dismissal as a staunch defender of women's rights.

f.)  Defendants relied upon conduct that the Plaintiff was not charged with or advised of, nor did Defendant provide Plaintiff with any notice that his innocent behavior (such as Plaintiff briefly sitting in a restaurant that Jane Doe was also in) was now wrongful. Defendants also violated its duty to have fair hearings by using,

20

without notice, the testimony from a former girlfriend and current employee of the MDOC regarding alleged private conversations as to Defendant Bozzo disliking Jane Doe, which were personal conversations taken out of context.

g.) The charges brought by Defendants were not brought with specificity and the work rules relied on were too vague to reasonably provide notice to the Plaintiff of what he needed to overcome to retain his employment.

h.) The charges, investigation, hearing, decision were influenced by a predisposition to favor Jane Doe because of her sez and Jane Doe's strong connections to management personnel, including the Defendants.

i.) Plaintiff was falsely charged with discrimination based on sexual harassment when Plaintiff never directed any unwelcome sexual comments or demonstrated any conduct toward Jane Doe. At no time did the Plaintiff harass or even contact Jane Doe by calling, text messages emailing or other form of communications.

j.) The Defendant completely failed to exercise reasonable efforts to ascertain the validity of the charges and the credibility of Jane Doe and relied on subjective feelings of Jane Doe, which is at the core of prejudice and discrimination.

k.) Use and reliance on an unfair and unconstitutional arbitration process

instigated and continued by the Defendants and a determination in this arbitration

that was not supported and was, indeed devoid, of adequate findings of fact and for

reasons that were not based on an announced and agreed work standard  for

termination as delineated in work rules and contained in  the charges deprived

Plaintiff of due process of law.  Plaintiff's termination was based on Defendants'

subjective *ad hoc* determination that the Plaintiff deserved punishment for innocent

behavior and his termination was to be used as an example for others contrary to

prior precedent and established employment rules and policies. The entire

disciplinary process was arbitrary and capricious and intentionally disregarded

Plaintiff' strong support by his immediate supervisors and coworkers at his place

of employment, Bellamy Creek Correctional Facility.

    l.)   Plaintiff has a right to be free from Defendant's reliance on unreasonable

and capricious decision making and to openly violate Defendant's own promise

and contractual agreement with Plaintiff.  Plaintiff was also entitled to valid

determinations regarding his rights that are based on accurate facts and a valid

legal basis that has established some precedence through disclosed contractual

terms and prior performance and enforcement.

    j.)   Defendants' direct intervention and show of force and testimony and

their exercising improper and undue influence upon the Arbitrator, who receives

significant income through MDOC arbitrations, and further display of extraordinary use of time expense and zeal in the prosecution of the charges conveyed the clear message that the Defendants strongly wanted the Arbitrator to rule against Plaintiff, despite the lack of a constitutional basis for the ruling. Defendants also breached its duties to protect the personal privacy of the Plaintiff, contractual and ethical duties toward the Plaintiff by inducing a current subordinate employee to testify at the arbitration as to alleged personal discussions with Plaintiff during a romantic relationship.

42.     Plaintiff would not have been terminated from his employment if he were a woman, who had referred to a male or female employee with profanity. In this case, Jane Doe did shout obscenities directly at the Plaintiff, without any disciplinary action being taken against her. Also, Jane Doe's false charges, threat to use her gun on Plaintiff, and use of profanity against the Plaintiff were not treated the same by Defendants as Plaintiff was disciplined and eventually terminated for behavior far less offensive.

43.     At all times relevant herein, Plaintiff performed his job duties in a competent and efficient manner and had the respect of his supervisory officers and co-workers, male and femaile.  Despite Plaintiff's more than satisfactory job performance, Charles Bozzo was intentionally and directly discriminated against

by the Defendants because  Plaintiff's sex as a male employee having a dispute with a female employee was perceived and acted upon by the Defendants, in the absence of any evidence, that the Plaintiff was an antagonist  and Jane Doe was a victim. This false preconception caused Defendants to bring and maintain disciplinary charges that culminated with Plaintiff's termination from employment with the MDOC, in total violation of the Philosophy and mandate of the Defendants purpose to provide persons engaged in the United States penal system a second chance.  The Plaintiff's age of greater than 45 years also was a motivating factor that fit the stereotype that the Plaintiff was misperceived as by Defendants.

44.   The Fourteenth Amendment of the United States Constitution requires due process of law and prohibits the denial of equal protection under the law because of Plaintiff's sex. The Defendants are liable for their direct conduct and participation in the disciplinary decision making in this case and for the establishment of the new unwritten policy, without warning, announcement or notice that certain words were punishable by their mere utterance and thus, to specifically punish male behavior and speech differently and more harshly than female behavior and speech toward males. Defendants used the Plaintiff's sex as a reason supporting the decision to terminate him.

45.    The Plaintiff was victimized by disparate treatment since female employees

who have been accused of similar or more severe misconduct have been treated less harshly or otherwise not even disciplined. Moreover, the Department's policy and history of using progressive discipline and second chances was ignored by Defendants in their termination of Plaintiff.

46.  Plaintiff's right to freely speak and associate and to be secure in his private life without governmental intrusion were also violated as described above.

47.    As a direct and proximate cause of the Defendants' deprivation of Plaintiffs' constitutional rights as protected by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, as specified above and made actionable by *43 USC § 1983*, Plaintiff was caused to suffer injuries and damages which included loss of wages, diminishment of earning capacity, humiliation, embarrassment, mental anguish, depression, deterioration of his physical health including heart failure, loss of self-esteem, and denial of social pleasure and enjoyment.

    *WHEREFORE*, Plaintiff, **Charles Bozzo**, demands judgment against the Defendants and each of them, jointly and severally, in an amount that is fair and just and in accordance with the evidence produced at trial in an amount in excess of Seventy Five Thousand ($75,000.00) Dollars with additional statutory interest and costs and Plaintiff further requests an award of reasonable actual attorneys'

fees pursuant to *42 USC § 1988* and/or *28 U.S.C. §2412 (d)(1)(A)*; and Plaintiff

specifically requests as to Defendant, Heidi Washington, as Director of the

Michigan Department of Corrections,  that this Court enjoin the unlawful conduct

described above and reinstate Plaintiff to his former position with all back pay,

seniority and pension credits and reimburse him for any other economic damages

that he may have incurred as a result of the unconstitutional conduct as detailed

above.

                                      Respectfully Submitted,

                                      Law Office of Frank G. Becker


                                      /S/ Frank G. Becker
                                 _____
                                   Frank G. Becker (P25502)
                                   Gregory D. Bill (P34096)
                                   Attorneys for Plaintiff
                                   18501 West Ten Mile Road
                                   Southfield, Michigan 48075
                                   (248) 789-2437
                                   frankgbecker@yahoo.com

Dated: December 18, 2023

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

**Charles Bozzo**
                    *Plaintiff,*                                    Case No
                                                                    Hon.

v.


**Jennifer Nanasy**, Discipline Coordinator
Michigan Department of Corrections
**Heidi Washington**, Director Michigan Department of Corrections
                    *Defendants.*
_____/
Frank G. Becker (P25502)
Law Office of Frank G. Becker
Attorney for Plaintiff
18501 W. 10 Mile Road
Southfield, MI  48075
(248) 789-2437
frankgbecker@yahoo.com

_____/
## JURY TRIAL DEMAND

NOW COMES Plaintiff, Charles L. Bozzo, by his attorneys, Frank G.

Becker and Gregory D, Bill, and respectfully demands a trial by jury of all relevant

issues arising in the above cause of action.

27

Respectfully Submitted,

Law Office of Frank G. Becker


/S/ Frank G. Becker

_____

Frank G. Becker (P25502)
Attorney for Plaintiff
18501 West Ten Mile Road
Southfield, Michigan 48075
(248) 789-2437
frankgbecker@yahoo.com

Dated: March 31, 2022

28